[Cite as *State v. Johnson*, 2026-Ohio-2465.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-L-123 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DENITO JOHNSON, | Trial Court No. 2024 CR 001431 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: June 29, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Jamie R. Eck*, Assistant Public Defender, 100 West Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Denito Johnson ("Johnson"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to a jointly recommended sentence of two years of community control as a result of his convictions of tampering with records and forgery. For the following reasons, we affirm.

{¶2} On appeal, Johnson asserts that insufficient evidence was presented to support his convictions and that his convictions are against the manifest weight of the evidence. Upon review, we conclude that Johnson's convictions are not against the

weight of the evidence. As such, Johnson's convictions are necessarily supported by sufficient evidence.

{¶3} The record in this appeal demonstrates that Johnson purchased a 2019 Dodge Ram 1500 truck in May 2021. The purchase was financed through Mechanics Bank. Johnson made payments on the vehicle until June 2023. In August 2023, Johnson sold the vehicle to his sister and her boyfriend. At the time the vehicle was sold, Johnson owed nearly $20,000 on the loan. To obtain title to the vehicle prior to sale, Johnson was required to submit an application to the Lake County Clerk of Courts Title Bureau ("Title Bureau"). Johnson was also required to present photo identification and proof of release of the lien by Mechanics Bank.

{¶4} In August 2023, Johnson submitted an application to obtain title to the vehicle to the Title Bureau, a government entity. A release of lien, purportedly from Mechanics Bank, was faxed to the Title Bureau. Mechanics Bank continued to seek repayment of the loan from Johnson and sent several letters regarding the status of the loan. Mechanics Bank later discovered that a fraudulent release of lien was used to obtain title to the truck. According to Mechanics Bank, the release of lien was not formatted like the documents used by Mechanics Bank. The document contained names of individuals as employees that had never been employed by the bank, and the fax number that was used to fax the document to the Title Bureau was never associated with Mechanics Bank. At the time Johnson obtained title to the vehicle based on the application and fraudulent release of lien, Johnson owed $19,350.19 on the loan.

{¶5} As neither Johnson's assignments of error are meritorious, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural Facts**

{¶6} On December 13, 2024, the Lake County Grand Jury returned a secret indictment and charged Johnson with tampering with records, a felony of the third degree, in violation of R.C. 2913.42(A)(2) ("Count 1") and forgery, a felony of the fourth degree, in violation of R.C. 2913.31(A)(3) ("Count 2"). Johnson waived his appearance at arraignment and entered a plea of "Not Guilty" to the charges.

{¶7} The matter proceeded to a jury trial on August 11, 2025. The following facts were presented at the trial:

{¶8} In May 2021, Johnson purchased a 2019 Dodge Ram 1500 for $50,108.16. Johnson signed a contract and obtained a loan from Mechanics Bank to finance the purchase. The contract was admitted as State's Exhibit 4. According to the contract terms, Johnson agreed to pay $529.28 per month for 72 months. The first payment was due on July 1, 2021. Johnson made payments for nearly two years via automatic recurring payments. Payments were made from the same account except for one payment in June 2023, which was made from a different account after the initial payment method was not processed due to "nonsufficient" funds. In August 2023, the total due and owing on the loan was $19,350.19.

{¶9} In August 2023, Johnson applied for certificate of title at the Title Bureau in Wickliffe, Lake County, Ohio. The application was admitted as State's Exhibit 2. Lisa Genter ("Genter"), an office supervisor at the Title Bureau in Wickliffe, Ohio, testified that the Title Bureau is a government agency. Genter also explained that when a vehicle has a current loan on it, the person driving the vehicle cannot obtain duplicative title until the loan has been paid off and released. Genter testified that to obtain title on a vehicle with

Case No. 2025-L-123

an active loan, the individual applicant would need to present the notarized lien release, provide their government photo ID, and complete a title application.

{¶10}  Genter testified that the release of lien, State's Exhibit 1, was faxed to the Title Bureau.  The document shows the fax number it was received from, which was not associated with Mechanics Bank. Johnson provided a completed application for certificate of title to the Title Bureau and title was ultimately issued to Johnson on August 31, 2023, which was introduced at trial as State's Exhibit 3.

{¶11}  Mechanics Bank Account Services Manager, Sarah Stewart ("Stewart"), testified that she audits any payoffs of automobile loans that Mechanics Bank receives.[1] Stewart testified that once an account is paid off, her department makes sure the title is released according to each state's guidelines. Stewart was contacted by Mechanics Bank Fraud Division, regarding a lien release associated with Johnson's account, State's Exhibit 1.  Stewart testified that the document has the header from Mechanics Bank, but "not the formatting." Stewart also testified lien releases are only notarized in the Henderson, Nevada office, and that no other branches or banks notarize these types of documents. According to Stewart, she did not recognize any of the names that were provided as employees of Mechanics Bank. After further investigation, it was discovered that the named individuals had never been employed by Mechanics Bank. Stewart also explained that the fax number on the document was not a fax number that Mechanics Banks ever utilized.

{¶12}  Stewart testified that the bank sent several monthly statements to Johnson, State's Exhibits 7A-7E, and that those statements were sent on October 12, 2023,

---

1. At the time of trial, Stewart testified that the auto division of Mechanics Bank was closing.

Case No. 2025-L-123

November 11, 2023, December 12, 2023, January 12, 2024, and February 10, 2024. Mechanics Bank also sent collection letters, State's Exhibits 8A and 8B, in November and December 2023. There was no evidence in the bank's records of Johnson's payment history that Johnson ever furnished payment to satisfy the loan.

{¶13} Matthew Alandt ("Alandt") is an investigator for the Bureau of Motor Vehicles ("BMV"). Alandt testified that he investigates identify theft, fraud involving titles, registrations, and forgery. Alandt regularly works on cases with local, state, and federal law enforcement agencies. Alandt testified that once a complaint is filed with the BMV, he reviews the documentation and interviews the parties involved. According to Alandt, a complaint was filed with the BMV on November 14, 2023. As a result, Alandt reviewed the documents associated with the Dodge Ram 1500 truck purchased by Johnson, including the application for title and the filed release of lien. Alandt also interviewed Johnson at his residence on May 29, 2024. According to Alandt, Johnson reported that he paid the loan on the truck in full in August 2023 and received a duplicative title. Johnson told Alandt that he then sold the truck to his sister and her boyfriend. Johnson completed and signed a voluntary witness statement which was admitted as State's Exhibit 9. Alandt also testified that he reached out to Mechanics Bank. Through his conversation with representatives at the bank, Alandt discovered that the individuals listed and identified as employees of the bank on the release of lien were never employees of Mechanics Bank.

{¶14} At the close of the State's evidence, defense counsel made an oral motion for acquittal pursuant to Crim.R. 29. The motion was denied. The defense rested and renewed the motion. The motion was again denied.

Case No. 2025-L-123

{¶15}   The jury found Johnson guilty of both counts, as charged in the indictment. As to Count 1, tampering with records, the jury also found that the record was kept by or belonged to, a local, state, or federal governmental entity. As to Count 2, forgery, the jury found that the value of the property or loss was greater than $7,500 but less than $150,000. The trial court ordered a presentence investigation ("PSI") and revoked bond.

{¶16}   Sentencing was held on September 12, 2025. The parties jointly recommended community control. The trial court sentenced Johnson to two (2) years of community control on each count with the following conditions that Johnson: (1) serve sixty (60) days in the Lake County Jail with thirty-four (34) days credit for time served, (2) enter, participate in, and successfully complete the Decision Points program and is to follow all recommendations; (3) have no involvement with drugs or alcohol and is to submit to random drug and alcohol screens; and (4) maintain full-time employment, be enrolled in school full-time, or maintain a full-time combination thereof. The trial court also ordered Johnson to pay restitution to the victim, Mechanics Bank, in the amount of $19,350.19.

{¶17}   Johnson appeals from the trial court's entry on sentence.

**The Appeal**

{¶18}   Johnson raises two assignments of error for review:

[1]. The trial court erred to the prejudice of [Johnson] when it denied his motion for acquittal under Crim.R. 29(A).

[2]. The jury erred to the prejudice of [Johnson] when it returned a verdict of guilty on Counts One and Two against the manifest weight of the evidence.

{¶19}   On appeal, where an appellant challenges both the sufficiency and the manifest weight of the State's evidence, the appellate court need only address the

Case No. 2025-L-123

manifest weight argument. *See State v. Dykes*, 2023-Ohio-4378, ¶ 6 (11th Dist.), quoting *State v. Masters*, 2020-Ohio-864, ¶ 17 (11th Dist.). The determination that a verdict is not against the manifest weight of the evidence necessarily includes a finding that the conviction was supported by sufficient evidence. *Id.* Thus, we address Johnson's assignments of error together.

{¶20} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶21} Johnson was convicted of tampering with records, a felony of the third degree, in violation of R.C. 2913.42(A)(2), and forgery, a felony of the fourth degree, in violation of R.C. 2913.31(A)(3).

Case No. 2025-L-123

{¶22} R.C. 2913.41(A)(2) provides:

> (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
>
> . . .
>
> (2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section.

{¶23} In regards to the forgery conviction, R.C. 2913.31(A)(3) provides:

> (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
>
> . . .
>
> (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

{¶24} Regarding the tampering with records conviction, the State additionally had to prove that "the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity . . . ." R.C. 2913.42(B)(4). Similarly for the forgery conviction, the State additionally had to show that "the value of the property or services or the loss to the victim is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars." R.C. 2913.31(C)(1)(b)(i). For purposes of these sections, "utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶25} Johnson argues on appeal that the State failed to present sufficient evidence on the mens rea elements of the offenses. Specifically, Johnson asserts that "no evidence was presented during the trial that connected . . . Johnson to the production of the alleged fraudulent lien release that was faxed directly to the Title Bureau." Johnson

Case No. 2025-L-123

also claims that there was no evidence that he received any of the monthly statements or collection letters. We disagree.

{¶26} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found Johnson guilty of tampering with records and forgery. In other words, the State presented sufficient evidence on those counts. After reviewing the record and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice.

{¶27} Specifically, Johnson was aware that he owed money on the loan for the truck. Johnson was making regular monthly payments for the contracted amount. Johnson was also sent several notices of the amount due and owing on the loan. Despite owing nearly $20,000 to Mechanics Bank, Johnson applied for certificate of title which required a release of the lien from Mechanics Bank. Such release is only possible when there has been full payment of the loan. Johnson sought to obtain title of the vehicle to be able to sell it and transfer clean title. Johnson's payment history through Mechanics Bank contained no evidence that Johnson paid the balance of the loan. The evidence established that Johnson was well-aware of the contract price for the truck, the amount of the monthly payments, the length of the payment period, and the amount owed on the loan. The amount remaining on the loan exceeded $7,500 but was less than $150,000 at the time he sought to obtain title to the vehicle from the Title Bureau. It is undisputed that the Title Bureau is a government entity. Johnson certainly benefitted from the fraudulent

Case No. 2025-L-123

lien release, as nearly $20,000 remained due and owing at the time of his application for title of the vehicle.

{¶28} Furthermore, simply because the State's evidence could be deemed circumstantial does not mean the jury's verdicts are against the manifest weight of the evidence. "Circumstantial evidence and direct evidence inherently possess the same probative value . . . ." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. Circumstantial evidence is defined as "testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Windle*, 2011-Ohio-4171, ¶ 34 (11th Dist.), citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *Windle* at ¶ 34, quoting *State v. Nevius*, 147 Ohio St. 263, 274 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *Windle* at ¶ 34. *See State v. Anderson*, 2024-Ohio-2505, ¶ 72 (11th Dist.).

{¶29} Here, there was ample circumstantial evidence, as set forth above, coupled with Johnson's rational and self-serving motive to obtain relief from his debt for the jury to fairly conclude that Johnson had committed the offenses charged. The jury did not lose its way as to create a manifest miscarriage of justice when it determined that Johnson was guilty of tampering with records and forgery by pursuing an application for title with a fraudulent release of lien.

{¶30} Thus, after reviewing the record and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice. We conclude that the State met its burden of persuasion as to both the tampering with records and forgery charges. As Johnson's convictions are not against the weight of the evidence, the convictions are necessarily supported by sufficient evidence.

{¶31} As such, Johnson's first and second assignments of error are without merit.

**Conclusion**

{¶32} For the reasons set forth above, we affirm the judgment of the Lake County Court of Common Pleas.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE ROBERT J. PATTON

JUDGE JOHN J. EKLUND,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-123